**In re Tony GONZALES, dba South Bay General Contractors, South Bay Concrete Construction, Debtor.**

**Tony GONZALES, dba South Bay General Contractors, South Bay Concrete Construction, Appellant,**

**v.**

**RAISER CONSTRUCTION CO., INC., a California Corporation, Appellee.**

**BAP No. NC–81–1236–VGE.**

**Bankruptcy No. 580 01294–M.**

**Adv. No. 80–0190.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Feb. 19, 1982.

Decided May 18, 1982.

Peter M. Talia, Santa Clara, Cal., for appellant.

Robert O. Wilhelm, Wilhelm, Thompson, Wentholt & Gibbs, Redwood City, Cal., for appellee.

Before VOLINN, GEORGE and ELLIOTT, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### I.

Raiser Construction Co., Inc., a general contractor, entered into two subcontracts

with the debtor, Tony Gonzales, on March 15 and 16, 1979. Gonzales agreed to provide the materials and labor needed to complete the concrete work on two buildings which Raiser was constructing. Gonzales was to receive a total payment of $35,193.00 for both jobs.

Each subcontract provided that all money received by the subcontractor from Raiser immediately became and constituted a trust fund for the benefit of "persons and firms supplying labor [and] materials . . . for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations arising hereunder have been fully discharged and all claims arising therefrom have been fully paid."

On November 15, 1979, Raiser commenced an action in state court against Gonzales for breach of contract, fraud and negligent misrepresentation. Subsequently, Gonzales filed a petition in bankruptcy. Seeking to have their claim declared nondischargeable, Raiser filed a complaint with the Bankruptcy Court.

The trial court found that Raiser paid Gonzales $34,451.10 and that Gonzales had diverted $16,663.18 to other projects and failed to pay Pacific Ready Mix, a materialman, and Donald Peckman, a laborer, on the two Raiser projects. Pacific Ready Mix and Peckman both filed mechanics liens. Consequently, Raiser had to post bonds to release the encumbrances.

## II.

The trial court concluded that the fiduciary clause of the subcontract agreement created an express trust whereby Gonzales held funds received from Raiser in trust for the benefit of laborers and materialmen. Gonzales does not challenge the trial court's determination that this provision created an express trust.

11 U.S.C. § 523(a)(4) provides that an obligation may not be discharged where the debt arises from the debtor's defalcation while acting in a fiduciary capacity. The trial court held that "the debt arose because of the defalcation by the defendant who was acting in a fiduciary capacity pursuant to an agreement with the plaintiff and that such debt should accordingly be excepted from the defendant's discharge in bankruptcy."

On appeal, Gonzales admits that he failed to pay Pacific Ready Mix and Peckman. He contends that since the failure to pay was partial and unintentional, the debt should be discharged. Specifically, he argues that there must be a showing of serious wrongdoing before fraud can be found as the ground for excepting a particular debt from discharge.

Gonzales asserts that "[t]he fraud must be established against the party charged by clear and convincing evidence . . ." before a debt can be found nondischargeable under § 523(a)(4) citing *Kunce v. Phillips*, Colo. App., 489 P.2d 329, 333 (1971). In the instant case the trial court did not find the debtor acted fraudulently but found that he committed a defalcation with respect to funds which he held in trust.

Pursuant to § 523(a)(4) a debt is not subject to discharge if the debtor, in a fiduciary capacity, engages either in fraud or defalcation with respect to funds held in trust. In *Central Hanover Bank and Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937) Judge Learned Hand held that the words "defalcation" and "fraud" as used in § 17(a)(4), 11 U.S.C. § 35(a)(4), the predecessor to current § 523(a)(4), have different meanings. *Id.* at 512. In defining "defalcation" as used in the Bankruptcy Act, Judge Hand wrote "[c]olloquially perhaps the word, 'defalcation', ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts."

Thus, it is not necessary to prove an intentional wrong by a debtor where it is shown that the debtor committed a defalcation with respect to funds held in trust. *In re Byrd*, 15 B.R. 154, 156 (Bkrtcy.Va.1981); *Matter of Polidoro*, 12 B.R. 867 (Bkrtcy.N.Y.1981); *In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977).

Gonzales contends that he should be credited with a 10% contract retention of $3,022.23. Since Raiser agrees, the judgment shall be so modified.

The judgment of the trial court is affirmed, and the trial court is instructed to modify the judgment so as to give Gonzales credit for the retainage withheld by Raiser.